**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         jvenditti@bursor.com
         jwilner@bursor.com

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MELISSA LANG and MILDRED SEVY, on behalf of themselves and all others similarly situated,

                          Plaintiff,

    vs.

PHARMAVITE LLC d/b/a NATURE MADE,

                          Defendant.

Case No. **'25CV933  AGS JLB**

**CLASS ACTION COMPLAINT**

[Demand for Jury Trial]

Plaintiffs Melissa Lang and Mildred Sevy (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Pharmavite LLC d/b/a Nature Made ("Nature Made" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit on behalf of themselves and other similarly situated consumers ("Class Members") who purchased Defendant's Nature Made prenatal vitamin products, including but not limited to Nature Made's Prenatal Multivitamin Folic Acid + DHA Softgels (the "Products").[1]

2. Defendant's Products are misleadingly marketed as safe for pregnant and lactating women and their fetuses, newborns, and infants yet are unfit for their intended use because they contain, or risk containing, toxic plastic chemicals.

3. Recent third-party testing has revealed[2] that the Products contain numerous plastic chemicals, including di-2-ethylhexyl phthalate ("DEHP"), dibutyl phthalate ("DBP"), diethyl phthalate ("DEP"), dimethyl phthalate ("DMP"), diisobutyl phthalate ("DIBP"), and dicyclohexyl phthalate ("DCHP"), phthalate substitute diethylhexyl terephthalate ("DEHT"), and a bisphenol, bisphenol A ("BPA").

4. These findings contradict Defendant's prominent front-label representations that the Products "Support[] the development of baby's brain, eyes & nervous system." *See* Figure 1. These findings also contradict Defendant's

---

[1] Discovery may reveal that additional Products are within the scope of this Complaint. Accordingly, Plaintiffs reserve the right to include additional items identified through the course of discovery.

[2] See PlasticList Report (published Dec. 27, 2024; updated Dec. 31, 2024), available at https://www.plasticlist.org/report (last accessed Apr. 9, 2025) (hereinafter, "2024 PlasticList Report").

CLASS ACTION COMPLAINT

marketing of the Products as healthful and carefully developed, including its USP verified logo, its claims of "CLINICALLY PROVEN ABSORPTION," the back-label assurances that the Products contain "No Synthetic FD&C Dyes" and is "Gluten Free," and the overall messaging that the Products are Dietary Supplements that can safely be used to improve the health of pregnant and lactating women and

 

their fetuses, newborns, and infants.  *See* Figures 1 and 2.

*Figure 1*                    *Figure 2*

5.    Phthalates are endocrine-disrupting chemicals "mainly used as plasticizers added to polyvinyl chloride (PVC) plastics for softening effects" which

CLASS ACTION COMPLAINT

1    "are detrimental to human health."[3]  These chemicals have also been reported as

2    probable human carcinogens by the EPA.[4]

3          6.    BPA is an endocrine-disrupting synthetic compound used to produce

4    polycarbonate plastic and is "harmful to human health through different molecular

5    mechanisms."[5]  BPA has also been liked to reproductive and developmental

6

7

8

9

10

11

12

13

14

15

16    [3] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5)
      Healthcare (Basel) 603 (May 18, 2021), *available at*
17    https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf
18    (hereinafter "*Phthalates and Their Impacts on Human Health*") ("Plastic has brought
      … many negative impacts on … human health, which has become a global problem.
19    People are constantly exposed to plastics via contaminated food, [among other
      sources] …. Long-term plastic exposure would inevitably lead to the leaching of
20    many harmful substances.  The most concerns include phthalates[.]  These
      substances have been identified as endocrine-disrupting chemicals (EDCs) which
21    interfere with normal hormonal actions.  Phthalates are a series of chemical
      substances, which are mainly used as plasticizers added to polyvinyl chloride (PVC)
22    plastics for softening effects.  Phthalates can potentially disrupt the endocrine
      system.  Health concerns regarding the detrimental impacts of phthalates on the
23    development and reproductive system have been raised in the recent decades.").
24
      [4] *See* United States Environmental Protection Agency, *Di (2-ethylhexyl)phthalate
25    (DEHP)*, *available at* https://iris.epa.gov/ChemicalLanding/&substance_nmbr=14
      (last accessed Mar. 20, 2025).
26
      [5] Ilaria Cimmino, et al., *Potential Mechanisms of Bisphenol A (BPA) Contributing to
27    Human Disease*, 21(16) INT J MOL SCI. (2020), *available at*
      https://pmc.ncbi.nlm.nih.gov/articles/PMC7460848/pdf/ijms-21-05761.pdf.
28

toxicity.[6]  Additional studies have shown BPA's association with cancer,[7] hormonal disruption,[8] and infertility.[9]

7.    Defendant's misleading representations and unfair business practices described herein are plainly improper and unacceptable.

8.    Accordingly, Plaintiffs bring claims against Defendant on behalf of themselves and all others similarly situated for (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violations of California's Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; and (5) Unjust Enrichment / Restitution.

## PARTIES

9.    Plaintiff Melissa Lang ("Plaintiff Lang") is a natural person and a citizen of California who resides in San Diego, California.  Ms. Lang has purchased the Products multiple times, most recently from a brick-and-mortar Costco in San Diego, California in March 2024.  In making her purchase, Ms. Lang relied on

---

[6] *See* Melody N. Grohs, et al., *Prenatal maternal and childhood bisphenol a exposure and brain structure and behavior of young children*, 18(85) ENVIRON HEALTH 1, 5 (2019), *available at* https://doi.org/10.1186/s12940-019-0528-9 (claiming that brain changes caused by BPA exposure during pregnancy directly explain behavior problems in children: "[T]he relationship of prenatal maternal BPA and internalizing behavior [a psychiatric term referring to inward-directed behaviors like anxiety, depression, social withdrawal, and low self-esteem] … demonstrated by a significant indirect effect.").

[7] *See* Haixing Song, et al., *Low doses of bisphenol A stimulate the proliferation of breast cancer cells via ERK1/2/ERRγ signals*, 30 TOXICOL VITRO. (2015), https://pubmed.ncbi.nlm.nih.gov/26363202/.

[8] *See* Johanna R. Rochester, et al., *Bisphenol S and F: a systematic review and comparison of the hormonal activity of bisphenol A substitutes*, 123(7) ENVIRON HEALTH PERSPECT. 643-50 (2015), https://pubmed.ncbi.nlm.nih.gov/25775505/.

[9] *See* John D. Meeker, et al., *Urinary bisphenol A concentrations in relation to serum thyroid and reproductive hormone levels in men from an infertility clinic*, 44(4) ENVIRON SCI TECHNOL. 1458–63 (2010), https://pubmed.ncbi.nlm.nih.gov/20030380/.

---

4

CLASS ACTION COMPLAINT

prominent representations on the Products' labeling and packaging that the Products "Support[] the development of baby's brain, eyes & nervous system" and understood these representations to mean that the product was safe for use as a prenatal vitamin. Plaintiff Lang had no reason to believe that the Products contained unsafe levels of phthalates and bisphenol.  Ms. Lang reasonably understood Defendant's representations and warranties to mean the Products are completely free of unnatural toxic chemicals, including phthalates and bisphenols, and therefore expected that the Products could be purchased and consumed as marketed and sold. Defendant's misleading representations were part of the basis of the bargain in that she would not have purchased the Products, or would not have purchased them on the same terms, if the true facts had been known.  Thus, as a direct result of Defendant's material misrepresentations and omissions, Plaintiff Lang suffered, and continues to suffer, economic injuries.

10.     Plaintiff Lang remains interested in purchasing the Products from Defendant in the future.  However, she is unable to determine if the Products are actually safe for consumption or if they contain, or risk containing, phthalate and bisphenol compounds.  As long as the Products are marketed as safe for consumption by pregnant and lactating women and their fetuses, newborns, and infants while the Products contain, or risk containing, phthalate and bisphenol compounds, Plaintiff Lang will be unable to make informed decisions about whether to purchase Defendant's Products in the future and will be unable to differentiate prices and qualities among Defendant's Products and competitors' products.  Plaintiff Lang is further likely to be repeatedly mislead by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Products actually conform to its representation that the Products are safe for consumption by pregnant and lactating women and their fetuses, newborns, and infants.

CLASS ACTION COMPLAINT

11.     Plaintiff Mildred Sevy ("Plaintiff Sevy") is a natural person and a citizen of California who resides in Santee, California.  Ms. Sevy has purchased the Products multiple times, most recently online from her computer while in California in December of 2023.  In making her purchase, Ms. Sevy relied on prominent representations on the Products' labeling and packaging that the Products "Support[] the development of baby's brain, eyes & nervous system" and understood these representations to mean that the product was safe for use as a prenatal vitamin. Plaintiff Sevy had no reason to believe that the Products contained unsafe levels of phthalates and bisphenol.  Ms. Sevy reasonably understood Defendant's representations and warranties to mean the Products are completely free of unnatural toxic chemicals, including phthalates and bisphenols, and therefore expected that the Products can be purchased and consumed as marketed and sold. Defendant's misleading representations were part of the basis of the bargain in that she would not have purchased the Products, or would not have purchased them on the same terms, if the true facts had been known.  Thus, as a direct result of Defendant's material misrepresentations and omissions, Plaintiff Sevy suffered, and continues to suffer, economic injuries.

12.     Plaintiff Sevy remains interested in purchasing the Products from Defendant in the future.  However, she is unable to determine if the Products are actually safe for consumption or if they contain, or risk containing, phthalate and bisphenol compounds.  As long as the Products are marketed as safe for consumption by pregnant and lactating women and their fetuses, newborns, and infants while the Products contain, or risk containing, phthalate and bisphenol compounds, Plaintiff Sevy will be unable to make informed decisions about whether to purchase Defendant's Products in the future and will be unable to differentiate prices and qualities among Defendant's Products and competitors' products.  Plaintiff Sevy is further likely to be repeatedly mislead by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and

that its Products actually conform to its representation that the Products are safe for consumption by pregnant and lactating women and their fetuses, newborns, and infants.

13.    Defendant Pharmavite LLC d/b/a Nature Made is a Limited Liability Company organized under the laws of California with its principal place of business in Los Angeles, California.  Defendant advertises, markets, manufactures, distributes, and sells its Products throughout California and the United States.  At all relevant times, Defendant has advertised, marketed, manufactured, distributed, and/or sold the Products to consumers in and throughout California and the United States.

14.    Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because there are more than 100 Class members, at least one member of the Class is a citizen of a different state than Defendant, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs.

16.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California, including in this District, and purposefully availed itself of the benefits of doing business in this District by conducting substantial business in California such that Defendant has significant, continuous, and pervasive contacts with the State of California.  In addition, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District because the Plaintiffs each purchased the Products in this District.

CLASS ACTION COMPLAINT

1
2
3
4

17.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the events, omissions, and acts giving rise to the claims herein occurred in this District, including Defendant's sale and Plaintiffs' purchase of the Products in this District.

5

**FACTUAL ALLEGATIONS**

6

**A.      THE HARMS OF PLASTIC CHEMICALS**

7
8
9
10
11

18.      In December 2024, PlasticList, a consumer-led independent research project, tested 312 products for plastic-related chemicals.   The researchers relied on a lab with "extensive experience in food testing, and [secured] the assistance of excellent analytical chemists and epidemiologists who educated [them] and tried to ensure that [their] work met a high bar of accuracy and transparency."[10]

12
13
14
15

19.      The researchers tested for a range of endocrine disrupting chemicals, including phthalates.[11]  Phthalates were developed as plasticizers, intentionally added to plastics to make them more flexible and durable.[12]  Phthalates are widely used in food production and packaging, cosmetics, and electronics.[13]

16
17
18
19
20

20.      Phthalates "readily leach"[14] into surrounding surfaces, including food. In humans, phthalates are endocrine disrupting chemicals that introduce a variety of health effects.  These effects were not known for many years due to a focus on high-dosage exposure models, but for plastic chemicals, low-dose effects may be even more harmful: "[the] paradigm of 'the dose makes the poison' does not hold for …

21
22

[10] 2024 PlasticList Report, *supra* note 2.

[11] *Id.*

23
24
25

[12] Kevin Loria, "What's the Difference Among Microplastic, Phthalates, BPA, and PFAS?" *Consumer Reports* (published May 29, 2024), *available at* https://www.consumerreports.org/toxic-chemicals-substances/microplastics-phthalates-bpa-pfas-a1059022044/ (last accessed Mar. 20, 2025).

26

[13] *Id.*

27
28

[14] Genoa Warner, Jodi Flaws, "Bisphenol A and Phthalates: How environmental Chemicals are Reshaping Toxicology," *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC6260148/

phthalates, and other endocrine disrupting chemicals. The unique properties of … phthalates, including low-dose effects, nonmonotonic dose response curves (NMDRCs), and quick metabolism, disobey traditional principles of toxicology." [15]

21.    Plastic chemicals have health impacts including disruptions of the endocrine, respiratory, and nervous systems.[16]

22.    Physicians, researchers, and public health experts have called for the elimination of phthalates and bisphenols from consumer products, including food packaging and materials that come in contact with food, due to their adverse effects on neurological development.[17]

**B.    THE PRODUCTS WERE FOUND TO CONTAIN TOXIC PHTHALATES AND BISPHENOL**

23.    PlasticList tested Defendant's Product Nature Made Prenatal Folic Acid + DHA.[18]

24.    PlasticList found that Defendant's Nature Made Prenatal Folic Acid + DHA contained di-2-ethylhexyl phthalate ("DEHP"), dibutyl phthalate ("DBP"), diethyl phthalate ("DEP"), dimethyl phthalate ("DMP"), diisobutyl phthalate ("DIBP"), and dicyclohexyl phthalate ("DCHP"), phthalate substitute diethylhexyl terephthalate ("DEHT"), and a bisphenol, bisphenol A ("BPA").

---

[15] *Id.*

[16] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5) Healthcare (Basel) 603 (May 18, 2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf ("*Phthalates and Their Impacts on Human Health*").

[17] Stephany Engel, Heather Patisaul, Charlette Brody, Russ Rauser, Amy Zota, Deborah Bennet, Maureen Swanson, and Robin Whyatt, "Neurotoxicity of Ortho-Phthalates: Recommendations for Critical Policy Reforms to Protect Brain Development in Children" *available at* https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2020.306014.

[18] 2024 PlasticList Report, *supra* note 2.

25.    Di-2-ethylhexyl phthalate, or DEHP, is a manufactured chemical that is commonly added to plastics to make them flexible.[19] "DEHP is best known as an endocrine disruptor. An endocrine disrupter is an exogenous substance or mixture that alters the function(s) of the endocrine system and consequently causes adverse health effects …. DEHP is highly toxic."[20] Studies indicate that exposure to DEHP can have a panoply of negative hepatic, renal, immunological, reproductive, and developmental effects on human health,[21] including "insulin resistance and higher systolic blood pressure and the reproduction system problems, including earlier menopause, low birth weight, pregnancy loss, and preterm birth."[22] "DEHP is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm."[23]

26.    Dibutyl phthalate, or DBP, is an oily liquid that is used as a plasticizer and solvent. Exposure to DBP can cause various adverse health effects, including reproductive and developmental harm.[24]  DBP is on California's Proposition 65 list

---

[19] Agency for Toxic Substances and Disease Registry ("ATSDR"), *Di(2-Ethylhexyl)Phthalate (DEHP)* (last reviewed Feb. 10, 2021), https://wwwn.cdc.gov/TSP/substances/ToxSubstance.aspx?toxid=65 (last accessed March 5, 2025).

[20] Sai Sandeep Singh Rowdhwal, et al., *Toxic Effects of Di-2-ethylhexyl Phthalate: An Overview*, 2018:1750368 Biomed Res Int. 1, 2 (2018), https://pmc.ncbi.nlm.nih.gov/articles/PMC5842715/pdf/BMRI2018-1750368.pdf (last accessed March 5, 2025).

[21] *See, e.g.*, ATSDR, *Toxicological Profile for Di(2-Ethylhexyl)Phthalate (DEHP)* (2022), at 17-18, https://www.atsdr.cdc.gov/ToxProfiles/tp9-c2.pdf (last accessed March 5, 2025).

[22] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5) Healthcare (Basel) 603 (May 18, 2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf (last accessed March 5, 2025) ("*Phthalates and Their Impacts on Human Health*") at 3-4.
[23] *Id.*

[24] *See* Proposition 65 Warnings, California Office of Environmental Health Hazard Assessment, *Di-n-butyl Phthalate (DBP)*, https://www.p65warnings.ca.gov/fact-sheets/di-n-butyl-phthalate-dbp

CLASS ACTION COMPLAINT

due to its ability to cause birth defects or other reproductive harm.[25] "California law prohibits the manufacture, sale, or distribution of children's toys and child care articles containing DBP at levels greater than 0.1%,"[26] and federal law has a similar prohibition.[27]

27.    Diethyl phthalate, or DEP, is a synthetic substance is commonly used to make plastics more flexible.[28] "Once [DEP] enters your body, it breaks down into other chemicals, some of which are harmful."[29] This harm can androgen-independent male reproductive toxicity as well as developmental toxicity and hepatic (liver) effects, with some evidence of female reproductive toxicity.[30]

28.    Dimethyl phthalate, or DMP, is a colorless liquid that is commonly used as an insect repellant. DMP has "toxic effects on development and reduction systems by disrupting endogenous hormones and their receptors" and "in high doses had carcinogenic, teratogenic, and mutagenic effects."[31]

29.    Diisobutyl phthalate, or DIBP, is a phthalate used as a plasticizer in industrial and consumer products that has been associated with negative health

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] ATSDR, *Public Health Statement for Diethyl Phthalate* (Oct. 21, 2011), https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=601&toxid=112.

[29] *Id.*

[30] James Weaver et al., *Hazards of diethyl phthalate (DEP) exposure: A systematic review of animal toxicology studies*, National Library of Medicine, *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC7995140/#:~:text=Conclusions%3A,evidence%20of%20female%20reproductive%20toxicity.

[31] Shixuan Li et al., *Invitro toxicity of dimethyl phthalate to human erythrocytes: from the aspects of antioxidant and immune functions*, 253 Env't Pollution (Oct. 2019), https://doi.org/10.1016/j.envpol.2019.07.014.

CLASS ACTION COMPLAINT

outcomes in animals including of the "male reproductive, female reproductive, developmental, liver, kidney" systems as well as with "cancer outcomes."[32]

30.    Dicyclohexyl phthalate, or DCHP, is considered a "substance of very high concern"[33] by the European Union's Chemical Agency for its endocrine disrupting properties and toxic reproductive effects.  The U.S. EPA has found that DCHP exposure "can harm the developing male reproductive system, in a phenomenon known as "phthalate syndrome" (e.g., decreased fetal testicular testosterone, male reproductive tract malformations, male nipple retention, and decreased male fertility).[34]

31.    Diethylhexyl terephthalate, or DEHT, is a phthalate substitute used as a general purpose plasticizer.  DEHT is a structural isomer of DEHP.[35]  While DEHT has been found to have a weaker effect on human hormones than its phthalate counterpart,[36] research is limited.

32.    Bisphenol A, or BPA, is an industrial chemical that has been used to make certain plastics and resins.[37]  Most commonly, BPA is found in polycarbonate plastics, which are often used in containers that store food and beverages (*e.g.*, water

---

[32] Erin E. Yost et al., Hazards of diisobutyl phthalate (DIBT) exposure: A systematic review of animal toxicology studies, 125 Env't Int'l (Apr. 2019), https://doi.org/10.1016/j.envint.2018.09.038.

[33] ECHA, *Candidate List of substances of very high concern for Authorisation*, *available at* https://echa.europa.eu/candidate-list-table (last accessed Apr. 9, 2025).

[34] EPA, *Risk Evaluation for Diculohexyl Phthalate (DCHP)*, *available at* https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/risk-evaluation-dicyclohexyl-phthalate-dchp (last accessed Apr. 9, 2025).

[35] Manori J. Silva, et al., "Exposure to di-2-ethylhexyl terephthalate in the U.S. general population from the 2015–2016 National Health and Nutrition Examination Survey," 123 Environ. Int. 141 (Feb. 2019), https://www.sciencedirect.com/science/article/pii/S0160412018322578.

[36] Kambia et al., "Comparative Effects of Di- (2-ethylhexyl)phthalate and Di-(2-ethylhexyl)terephthalate Metabolites on Thyroid Receptors: In Vitro and In Silico Studies," Metabolites (Feb. 2021), *available at* doi: 10.3390/metabo11020094.

[37] Johanna R. Rochester, *Bisphenol A and human health: A review of the literature*, 42 Reprod. Toxicology (2013), https://doi.org/10.1016/j.reprotox.2013.08.008.

bottles), and epoxy resins used to coat the inside of metal products like food cans, bottle tops and water supply lines.[38]  However, "research has shown that BPA can seep into food or beverages from containers that are made with BPA."[39]  "BPA is a known endocrine disruptor," and BPA exposure in humans has been associated with "adverse perinatal, childhood, and adult health outcomes, including reproductive and developmental effects, metabolic disease and other health effects."[40]

33.    Defendant's other prenatal Products are substantially similar to its Nature Made Prenatal Folic Acid + DHA Supplement.[41] The Claims on the Products' packaging are substantially similar and, in some cases, exactly the same ("Supports the development of baby's brain, eyes & nervous system"[42]). The Products' intended use as prenatal supplements is the same, the serving size is the same, the packaging

---

[38] Brent A. Bauer, *What is BPA, and what are the concerns about BPA?* Mayo Clinic (Mar. 24, 2023), https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/bpa/faq-20058331.

[39] *Id*.

[40] Johanna R. Rochester, *Bisphenol A and human health: A review of the literature*, 42 Reprod. Toxicology (2013), https://doi.org/10.1016/j.reprotox.2013.08.008; *see also* Brent A. Bauer, *What is BPA, and what are the concerns about BPA?* Mayo Clinic (Mar. 24, 2023), https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/bpa/faq-20058331 ("Exposure to BPA is a concern because of the possible health effects on the brain and prostate gland of fetuses, infants and children. It can also affect children's behavior. Additional research suggests a possible link between BPA and increased blood pressure, type 2 diabetes and cardiovascular disease.").

[41] Nature Made, Prenatal Multivitamin Folic Acid + DHA Softgels, *available at* https://www.naturemade.com/products/nature-made-prenatal-multi-dha-softgels?_pos=1&_sid=06e1f9c86&_ss=r&variant=17881406505031&utm_campaign=dtcpmaxtier2&utm_source=google&gad_source=1&gclid=CjwKCAjwtdi_BhACEiwA97y8BBktOMBiUnq9Nc4SzPU04QfHJfMwm08GADdCUhomHJL8Mfc_L6zYNRoCtHcQAvD_BwE&gclsrc=aw.ds (last accessed Apr. 9, 2025) ("Nature Made Prenatal Multivitamin Folic Acid + DHA Softgels").

[42] Nature Made, Prenatal Multivitamin Tablets, *available at* https://www.naturemade.com/products/nature-made-prenatal-multi-tablets?queryID=f8abcf7bcb6f83d2ff65db7a259d7947&s=1&p=4&variant=17881331400775 (last accessed Apr. 9, 2025) ("Nature Made Prenatal Multivitamin Tablets").

13

materials appear to be the same, and the quantity and percentage daily value of seventeen of the eighteen included nutrients is exactly the same.[43] The Products differ only slightly, for example by the number of servings in each container.

### C.    DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS MISLEAD CONSUMERS

34.    The Products' labeling and/or packaging states that the Products "Support[] the development of baby's brain, eyes & nervous system."  Indeed, based on Defendant's representations, Plaintiffs and other reasonable consumers reasonably understood Defendant's representations and warranties to mean the Products are free of toxic plastic chemicals, and therefore expected that the Products are healthy and can be purchased and consumed as marketed and sold.

35.    Defendant's Products contain various toxic, unnatural chemicals, as revealed by a December 2024 PlasticList Report that tested everyday products for the presence of plastic chemicals.[44]

36.    Further, by marketing the Products as "Prenatal Supplements," Defendant leads consumers to understand that the Products are safe for expecting parents to consume.  Indeed, these representations are contradicted by the presence, or risk thereof, of toxic plastic chemicals.

37.    Any amount of the toxic chemicals found in the Products renders Defendant's representations misleading.

38.    Reasonable consumers believe that representations about supporting the development of a child during pregnancy would mean that the product is completely free of endocrine disrupting chemicals. Expecting parents place a high value and price premium on supplements that are free of such substances, as Defendant knows.

---

[43] *Compare* Nature Made Prenatal Multivitamin Tablets, *supra* to Nature Made Prenatal Multivitamin Folic Acid + DHA Softgels, *supra*.

[44] 2024 PlasticList Report, *supra* note 2.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.    **DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS ARE ACTIONABLE**

39.    Defendant makes a misrepresentation of fact on its Products' labels by claiming that the Products "Support[] the development of baby's brain, eyes & nervous system."

40.    Defendant omits a material fact to consumers—that the Products contain phthalates and bisphenol.

41.    As the primary developer, manufacturer, advertiser, and wholesaler of the Products, Defendant knew or should have known that the Products' labeling was deceptive.

42.    It is therefore plausible that Defendant knew or should have known of the presence of harmful chemicals such as phthalates and bisphenol in the Products.

43.    As such, Plaintiffs and Class Members saw and relied on Defendant's representations and omissions and reasonably understood these representations and warranties to mean that the Products were safe and healthy to consume. Plaintiffs and Class Members would have paid substantially less for the Products or would not have purchased the Products at all had they known that the Products contained harmful chemicals.  Therefore, Plaintiffs and the Classes were injured in the amount of the price premium they paid for the Products which they otherwise would not have paid absent Defendant's misrepresentation and omission.  Accordingly, Plaintiffs and Class Members suffered economic injuries as a result of purchasing the Products.

44.    Defendant also had a duty to disclose because of its exclusive and/or superior knowledge concerning the true nature of the Products.  Nevertheless, Defendant concealed and misrepresented this information in order to maximize its own profits.

CLASS ACTION COMPLAINT

45.    Although Defendant is in the best position to know the true nature of its Products during the relevant timeframe, to the extent possible, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

46.    **WHO**: Defendant Pharmavite LLC d/b/a Nature Made

47.    **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain phthalates and bisphenol. These omissions were material to Plaintiffs and the Classes because they would not have paid the same amount for the Products or would not have purchased the Products at all had they known the Products contained phthalates and bisphenol. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiffs and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Products in this manner in the United States.

48.    **WHEN**: Defendant made material misrepresentations and omissions to Plaintiffs and Class Members during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Products were not free of harmful chemicals.  Plaintiffs and Class Members viewed the packaging of the Products when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Products did not contain harmful chemicals.

49.    **WHERE**: Defendant made material misrepresentations and omissions on the Products' labels and packaging. The products were marketed and sold in the misleading manner described herein throughout California and the United States.

50.    **HOW**: Defendant made material misrepresentations and omissions of fact regarding the Products by representing and warranting that the Products were safe and healthy to consume. Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Products.

CLASS ACTION COMPLAINT

51.   **INJURY**: Plaintiffs and Class Members purchased, paid a premium (up to the full price), or otherwise paid more for the Products than they would have, or alternatively, they would not have purchased the Products at all absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

52.   Plaintiffs bring this matter on behalf of themselves and all similarly situated in the following class (the "Nationwide Class"):

> All natural persons in the United States who purchased the Products, and all substantially similar products, during the applicable statutory period.

53.   Plaintiffs also bring this matter on behalf of themselves and all similarly situated in the following subclass (the "California Subclass")

> All natural persons in California who purchased the Products, and all substantially similar products, during the applicable statutory period.

54.   The Nationwide Class and California Subclass are referred to collectively as the "Classes" throughout this Complaint.

55.   The "Statutory Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

56.   Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, its current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

57.   Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses in connection with their

motion for class certification, or at any other time, based on *inter alia*, changing circumstances and new facts obtained.

58.    **Numerosity:** Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are hundreds of thousands of people who purchased the Products and substantially similar versions of the Products who have been injured by Defendant's false and misleading representations.  While the exact number of members of each Class is unknown to Plaintiffs at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and their agents.

59.    **Commonality and Predominance:** Questions of law and fact common to the classes that predominate over any questions that may affect individual class members include, but are not limited to:

(a)    Whether Defendant's Products contain or risk containing phthalates and bisphenol;

(b)    Whether Defendant knew that its Products contained or risked containing phthalates and bisphenol;

(c)    Whether Defendant breached an implied warranty of merchantability;

(d)    Whether Defendant had a duty to disclose the presence of phthalates and bisphenol in their Products;

(d)    Whether Plaintiffs and Class Members reasonably relied on Defendant's representations, warranties, and omissions;

(e)    Whether Defendant's conduct violated California's consumer protection statutes;

(f)    Whether Defendant's conduct amounted to violations of the common law; and

(g)    Whether the knowledge of the presence (or risk thereof) of phthalates and bisphenol in the Products would be material to a reasonable consumer; and

(h)    Whether Plaintiffs and the Classes are entitled to damages and/or restitution; and

CLASS ACTION COMPLAINT

(i)    Whether an injunction is necessary to prevent Defendant from continuing to sell its Products without warning labels for phthalates and bisphenol or risk thereof.

60.    **Typicality:** The claims of the named Plaintiffs are typical of the claims of the members of the Classes. The named Plaintiffs, like other members of the Classes, purchased the tested Product and Defendant's substantially similar Products. Plaintiffs relied on the representations and warranties made by Defendant on the Products' packaging that the Products were safe for ordinary use.

61.    **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this class action.  Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiffs are able to fairly and adequately represent the interests of the Class.  Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and Plaintiffs will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave of this Court to amend this Complaint to include additional Class Representatives to represent the Class or additional claims as may be appropriate.

62.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues.  By contrast, the maintenance of this action as a

1    class action, with respect to some or all of the issues presented herein, presents fewer

2    management difficulties, conserves the resources of the parties and of the court

3    system and protects the rights of each member of the Classes.  Plaintiffs anticipate no

4    difficulty in the management of this action as a class action.  Class-wide relief is

5    essential to compel compliance with California's consumer protection laws.

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, et seq.**
**(On Behalf of the California Subclass)**

63.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

64.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

65.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."

66.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

67.    Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

68.    Defendant violated Civil Code §§1770(a)(5), (a)(7), and (a)(9) by holding out the Products as safe for consumption by pregnant and lactating women and their fetuses, newborns, and infants when, in fact, the Products contain, or risk containing, phthalate and bisphenol compounds.

69.    Defendant made its representations to Plaintiffs and the members of the California Subclass while suppressing the true nature of the Products.  Specifically, Defendant displayed the Products and described them as safe for consumption by

CLASS ACTION COMPLAINT

pregnant and lactating women and their fetuses, newborns, and infants, including through the Products' packaging, without disclosing that the Products contains (or risks containing) toxic phthalate and bisphenol chemicals.  As such, Defendant affirmatively misrepresented, *inter alia*, the ingredients, quality, and grade of the Products while continuing to advertise the goods without the intent to sell them as advertised.

70.    Plaintiffs and the California Subclass suffered harm as a result of the violations of the CLRA because they incurred, charged, and/or paid monies for the Products that they otherwise would not have incurred or paid and were unknowingly exposed to dangerous plastic chemicals.

71.    On February 13, 2025, prior to filing this complaint, Defendant received Plaintiff's demand letter via certified mail.  The letter advised Defendant that it was in violation of the CLRA with respect to the presence of phthalates and bisphenol in the Products and demanded that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

72.    Defendant failed to remedy the issues raised by the notice letter.

73.    Pursuant to Civ. Code § 1780, Plaintiffs and the California Subclass seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative acts and practices; (c) restitution of all money and property lost by Plaintiffs and the California Subclass as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) attorneys' costs and fees.

## COUNT II
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the California Subclass)

74.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT

75.    Plaintiffs bring this claim individually and on behalf of the California Subclass against Defendant.

76.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

77.    Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as well as by violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

78.    As more fully described above, Defendant's misleading packaging and labeling of its Products is likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully above, thereby violating the common law.

79.    Plaintiffs and the California Subclass reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

80.    Defendant also violated the UCL's prohibition against engaging in **Unfair Business Practices.**  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, *et. seq.*, as the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

81.    There were reasonably available alternatives to further Defendant's legitimate business interest other than the conduct described above.  There are no legitimate business purposes served by Defendant's conduct, which caused Plaintiffs

CLASS ACTION COMPLAINT

1    and the California Subclass economic injury because they purchased the Products,

2    the basis of the bargain for which was untrue.

3        82.    Defendant has further violated the UCL's proscription against engaging

4    in **Fraudulent Business Practices.**  Defendant's claims, nondisclosures, and

5    misleading statements with respect to the Products, as more fully set forth above,

6    were false, misleading, and/or likely to deceive the consuming public within the

7    meaning of Bus. & Prof. Code § 17200.

8        83.    Plaintiffs and the California Subclass suffered a substantial injury by

9    virtue of buying the Products that they would not have purchased absent Defendant's

10    unlawful, fraudulent, and unfair packaging, labeling, and omission about the

11    inclusion of harmful toxins in its Products.

12        84.    There is no benefit to consumers or competition from deceptively

13    marketing and omitting material facts about the true nature of the Products.

14        85.    Plaintiffs and the California Subclass had no way of reasonably

15    knowing that the Product they purchased was not truthfully marketed, advertised,

16    packaged, or labeled.  Thus, they could not have reasonably avoided the injury each

17    of them suffered.

18        86.    The gravity of the consequences of Defendant's conduct as described

19    outweighs any justification, motive, or reason therefore, particularly considering the

20    available legal alternatives that exist in the marketplace.  Such conduct is immoral,

21    unethical, unscrupulous, offends established public policy, or is substantially

22    injurious to Plaintiffs and the other members of the California Subclass.

23        87.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the

24    California Subclass seek an order of this Court that includes, but is not limited to,

25    requiring Defendant to (a) provide restitution to Plaintiffs and other members of the

26    California Subclass; (b) disgorge all revenues obtained as a result of violations of the

27    UCL; and (c) pay Plaintiffs' attorneys' fees and costs.

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of the California Subclass)

88.     Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

89.     Plaintiffs bring this claim individually and on behalf of the California Subclass against Defendant.

90.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive, members of the California Subclass and public.  As described throughout this Complaint, Defendant misrepresented the Products as free from toxic chemicals and therefore safe to ingest when, in fact, the Products contain (or risks containing) toxic chemicals phthalates and bisphenol.

91.     By its actions, Defendant disseminated advertisements on its Products that they are safe to consume for their intended purpose.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public.

92.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Products contain (or risk containing) substances that pose a significant risk to the health of consumers. Defendant has also failed to correct its advertising.

93.     Defendant continues to misrepresent to consumers that the Products are safe to ingest when, in fact, the Products are not or risks being not safe to ingest.

94.     In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiffs and members of the California Subclass based their

1    purchasing decisions on Defendant's omitted material facts.  The revenue
2    attributable to the Product sold in those false and misleading advertisements likely
3    amounts to millions of dollars.  Plaintiffs and members of the California Subclass
4    were injured in fact and lost money and property as a result of Defendant's conduct.

5        95.    The misrepresentations and non-disclosures by Defendant of the
6    material facts described and detailed herein constitute false and misleading
7    advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500,
8    *et. seq.*

9        96.    As a result of Defendant's wrongful conduct, Plaintiffs and members of
10   the California Subclass lost money in an amount to be proven at trial.  Plaintiffs and
11   the California Subclass are therefore entitled to restitution, as appropriate, for this
12   cause of action.

13       97.    Plaintiffs and the California Subclass seek all monetary and non-
14   monetary relief allowed by law, including (a) restitution of all profits stemming from
15   Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory
16   relief; (c) reasonable attorneys' fees and costs under California Code Civ. Proc. §
17   1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**<u>COUNT IV</u>**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class)**

20       98.    Plaintiffs reallege and incorporate the foregoing allegations as if fully
21   set forth herein.

22       99.    Plaintiffs bring this claim individually and on behalf of the Nationwide
23   Class.

24       100.   Plaintiffs bring this claim under the laws of the State of California.

25       101.   Plaintiffs and members of the Nationwide Class formed a contract with
26   Defendant at the time they purchased the Products.

27
28

CLASS ACTION COMPLAINT

102.   The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging, as described above.

103.   This labeling constitutes an express warranty, and became part of the basis of the bargain and are part of the standardized contract between Defendant and Plaintiffs and members of the Nationwide Class.

104.   As set forth above, Defendant purports, through its labeling and packaging, to create an express warranty that the Products are safe for their intended use.

105.   Plaintiffs and members of the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

106.   Defendant breached express warranties about the Products and the Products' qualities because, despite Defendant's warranties that the Products are safe for their intended use, the Products risks containing, or worse, do contain harmful, toxic phthalate and bisphenol chemicals.  Thus, the Products do not conform to Defendant's affirmations and promises described above.

107.   Plaintiffs and each member of the Nationwide Class would not have purchased the Products had they known their true nature.

108.   As a result of Defendant's breach of express warranty, Plaintiffs and each member of the Nationwide Class suffered and continue to suffer financial damage and injury and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>COUNT V</u>
**Unjust Enrichment / Restitution**
**(On Behalf of the Nationwide Class)**

109.   Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT

110.  Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

111.  Plaintiffs bring this claim under the laws of the State of California.

112.  To the extent required by this law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

113.  Plaintiffs and members of the Nationwide Class conferred benefits on Defendant by purchasing the Products.

114.  Defendant was unjustly enriched in retaining the revenues derived from Plaintiffs and members of the Nationwide Class's purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products contained (or risked containing) toxic substances, rendering its positive representations of the Products' healthy qualities false and misleading.  These omissions caused injuries to Plaintiffs and members of the Nationwide Class because they would not have purchased the Products had they known the true facts.

115.  Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Nationwide Class is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, in their individual capacities and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a)  For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as representatives of the Classes, and Plaintiffs' Counsel as Class Counsel;

b)  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c)  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

CLASS ACTION COMPLAINT

d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper;

h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.


Dated: April 18, 2025              Respectfully submitted,

                                   **BURSOR & FISHER, P.A.**

                                   By:    /s/ *Julia K. Venditti*
                                          Julia K. Venditti

                                   L. Timothy Fisher (State Bar No. 191626)
                                   Julia K. Venditti (State Bar No. 332688)
                                   Joshua R. Wilner (State Bar No. 353949)
                                   1990 North California Blvd., 9th Floor
                                   Walnut Creek, CA 94596
                                   Telephone: (925) 300-4455
                                   Facsimile:  (925) 407-2700
                                   E-mail: ltfisher@bursor.com
                                           jvenditti@bursor.com
                                           jwilner@bursor.com

                                   *Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT

## CLRA VENUE DECLARATION

I, Julia K. Venditti, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., and counsel of record for Plaintiffs in this matter.  Plaintiff Melissa Lang alleges that she resides in San Diego, California, and Plaintiff Mildred Sevy alleges that she resides in Santee, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California, as Plaintiff Lang purchased the Products from a brick-and-mortar retail stores located within this District, and Plaintiff Sevy purchased the Products online from her computer while in this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 18th day of April, 2025.

_/s/ Julia K. Venditti_
Julia K. Venditti

CLASS ACTION COMPLAINT